Panos Alifieris et al., Respondents, v American Airlines, Inc., Defendant, and Don Cooper et al., Appellants.

Second Department, December 27, 1983

APPEARANCES OF COUNSEL

*Meiselman, Boland, Reilly & Pittoni* (*John J. Reilly* and *Leonard J. Meiselman* of counsel), for Don Cooper and another, appellants.

*Lipsig, Sullivan, & Liapakis, P. C.* (*Pamela Anagnos Liapakis* and *Frank V. Floriani* of counsel), for respondents.

*John Downing* for defendant.

OPINION OF THE COURT

Mangano, J.

In this tort action against, *inter alia,* a Suffolk County police officer and his wife, Special Term granted that

branch of plaintiffs' motion which sought to strike the defendants Coopers' third affirmative defense that plaintiffs failed to comply with section 50-e of the General Municipal Law. The narrow issue to be resolved on this appeal is whether Special Term was correct in striking that affirmative defense. A resolution of this issue hinges on the answer to a second question, namely, may an off-duty police officer who commits a negligent act or tort while discharging his duty outside the geographical limits of his employer's jurisdiction, obtain indemnification from his employer pursuant to subdivision 2 of section 50-j[1] of the General Municipal Law? In our view, this second question must be answered in the negative, and accordingly, Special Term correctly granted plaintiffs' motion to strike defendants Coopers' third affirmative defense.

# I

The underlying action herein, which was commenced in 1979, was instituted by plaintiffs Panos and Cleo Alifieris against defendants American Airlines, Inc., Don Cooper and Mary Cooper.

The complaint alleged, *inter alia,* that Panos Alifieris, an employee of Olympic Airlines, was the victim of an assault and battery inflicted on September 14, 1978 at J.F.K. International Airport in Queens County by Don Cooper, a Suffolk County police officer who was off duty, and his wife Mary Cooper, who was an employee of American Airlines. The complaint also alleged a negligent striking of Panos Alifieris by the Coopers, a claim for punitive damages, a cause of action against American Airlines based on vicarious liability, and a cause of action on behalf of Cleo Alifieris to recover damages for loss of consortium.

In their "second amended answer and counterclaim" the Coopers alleged as a third affirmative defense: "That the plaintiffs have failed to comply with the provisions of Section 50-e of the General Municipal Law."

It was the defendants Coopers' position that the plaintiffs had failed to serve a notice of claim upon Suffolk County, the employer of defendant Don Cooper, as required by section 50-e of the General Municipal Law.

---

1. There are two sections 50-j in the General Municipal Law. All of our references to section 50-j are to the first of these sections (L 1974, ch 406, § 1, as amd).

In a fourth affirmative defense, the Coopers alleged: "That the actions of the answering defendants were justified as reasonable force in the exercise of public and/or official duty, were in self-defense, were as a result of the provocation of the plaintiff, PANOS ALIFIERIS, and fell within the pertinent provisions of Article 35 of the Penal Law of the State of New York."

With respect to this affirmative defense, the Coopers argued that Don Cooper was an off-duty Suffolk County police officer on the day in question, and was with his wife at J.F.K. International Airport in Queens. According to them, the male plaintiff assaulted them, and when Don Cooper attempted to place the male plaintiff under arrest, he resisted and thereby suffered injuries.

Thereafter, plaintiffs moved, *inter alia,* to strike the Coopers' third affirmative defense which alleged that plaintiffs failed to comply with section 50-e of the General Municipal Law. With respect to this motion, plaintiffs' counsel argued that section 50-e of the General Municipal Law was not applicable to the case, since the action was commenced against individuals and not against the public employer, Suffolk County. Accordingly, plaintiffs' counsel argued that no notice of claim had to be served on Suffolk County.

In opposition to plaintiffs' motion, the Coopers' counsel argued that pursuant to subdivisions 1 and 2 of section 50-j of the General Municipal Law, the county had an obligation (or at least a question of fact existed as to an obligation) to reimburse defendant Don Cooper.

The Coopers' counsel argued that, since the county had the statutory obligation to indemnify Don Cooper, an action could not be maintained against Don Cooper unless a notice of claim was served on his employer, Suffolk County, in accordance with paragraph (b) of subdivision 1 of section 50-e of the General Municipal Law which provides:

"Section 50-e. Notice of Claim

"1. When service required; time for service; upon whom service required * * *

"(b) Service of the notice of claim upon an officer, appointee or employee of a public corporation shall not be a

condition precedent to the commencement of an action or special proceeding against such person. If an action or special proceeding is commenced against such person, but not against the public corporation, service of the notice of claim upon the public corporation shall be required only if the corporation has a statutory obligation to indemnify such person under this chapter or any other provision of law".

Since no notice of claim was served on Suffolk County, the Coopers' counsel argued that the affirmative defense alleging this failure to serve a notice of claim on the county could not be dismissed.

In a reply affidavit, plaintiffs' counsel noted that Mary Cooper had raised no factual issue as to any connection with the county, and her third affirmative defense therefore had to be stricken. With respect to Don Cooper, counsel alerted the court to Don Cooper's deposition wherein he conceded that he was off duty in Queens County on the date in question. Counsel argued that under those circumstances, Don Cooper could not obtain indemnification from Suffolk County under section 50-j of the General Municipal Law. Accordingly, counsel urged, plaintiffs did not have to serve a notice of claim on the county when they sued Don Cooper without joining Suffolk County as a party defendant, and the third affirmative defense of Don Cooper had to be stricken.

In a surreply affirmation, counsel for the defendants Don and Mary Cooper annexed parts of Don Cooper's examination before trial as well as Panos Alifieris' examination before trial which indicated that (1) Don Cooper tried to arrest Panos Alifieris after Alifieris assaulted him and his wife and (2) Don Cooper showed Alifieris a badge when he attempted to make the arrest.

Special Term granted plaintiffs' motion to strike defendants Coopers' third affirmative defense on the ground that "[p]laintiffs * * * are not seeking to recover against a municipality but solely against the individual defendants Cooper".

## II

In our view, the order of Special Term must be affirmed insofar as appealed from.

It is clear from this record that Mary Cooper has no connection with the County of Suffolk or any other "public corporation" (General Municipal Law, § 50-e). Accordingly, the Coopers' third affirmative defense regarding a failure by plaintiffs to serve a notice of claim upon Suffolk County in accordance with section 50-e (subd 1, par [b]) of the General Municipal Law was properly dismissed as to her.

However, with respect to Don Cooper, this same affirmative defense cannot be disposed of so summarily.

Section 50-e (subd 1, par [b]) of the General Municipal Law provides that when a tort action is started against a public employee but not against his public corporation employer and the public corporation has a statutory duty to indemnify that employee, then a notice of claim must be served upon the public corporation. The Coopers' counsel argues that defendant Don Cooper was entitled to indemnification from his employer, Suffolk County, under the facts at bar, pursuant to subdivision 2 of section 50-j of the General Municipal Law and therefore plaintiffs had to serve a notice of claim on Suffolk County. In view of plaintiffs' failure to do so, the Coopers' counsel argues that said defendants' third affirmative defense should not have been stricken as to Don Cooper.

We disagree with this analysis of subdivision 2 of section 50-j of the General Municipal Law.

Section 50-j of the General Municipal Law provides as follows:

"Section 50-j. Liability of police officers for negligence in the performance of duty

"1. Notwithstanding the provisions of any general, special or local law, charter or code to the contrary, every city, county, town, village, authority or agency shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed police officer of such municipality, authority or agency for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment.

"2. For purposes of this section, a police officer of any such municipality, authority or agency, when within the

geographical limits of his jurisdiction, although excused from official duty at the time, shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law and such public duty performed was for the benefit of all the citizens of the community and the municipality, authority or agency derived no special benefit in its corporate capacity."

Since defendant Don Cooper was concededly off duty on the date and time of the subject incident, it is clear that subdivision 2, and not subdivision 1, of section 50-j of the General Municipal Law is the operative provision, and that any right possessed by defendant Don Cooper to indemnification from his employer, Suffolk County, derives, if at all, from subdivision 2.

The troublesome language in subdivision 2 is that which speaks of an off-duty policeman acting "within the geographical limits of his jurisdiction". Counsel for defendant Don Cooper argues that "the geographical limits of his jurisdiction" consists of the entire State of New York. In support of that argument, he points to the State-wide arrest powers of a police officer which are set forth in CPL 140.10 (subd 3) which provides: "A police officer may arrest a person for a crime, pursuant to subdivision one, whether or not such crime was committed within the geographical area of such police officer's employment, and he may make such arrest within the state, regardless of the situs of the commission of the crime."

Since defendant Don Cooper was an off-duty Suffolk County police officer acting in Queens County (i.e., within New York State) at the time of the incident, his counsel argues that subdivision 2 of section 50-j of the General Municipal Law governs here, and that pursuant to said subdivision Don Cooper is entitled to indemnification from his employer, Suffolk County.

In our view, the relevant legislative history surrounding the enactment of section 50-j of the General Municipal Law precludes the statutory interpretation offered by Don Cooper's counsel.

Subdivisions 1 and 2 of section 50-j of the General Municipal Law were initially enacted in 1974 (L 1974, ch 406[2]) and were applicable solely to police officers employed by the City of New York.[3] Specifically, the statute as initially enacted provided as follows:

"§ 50-j. Liability of policemen for negligence in the performance of duty.

"1. Notwithstanding the provisions of any general, special or local law, charter or code to the contrary, every city having a population of one million or more shall be liable for, and shall assume the liability to the extent that it shall save harmless, any duly appointed policeman of such city for any negligent act or tort, provided such policeman, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment.

"2. For purposes of this section, a policeman of any such city, when within the geographical limits of such city, although excused from official duty at the time, shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law and such public duty performed was for the benefit of all the citizens of the community and the city derived no special benefit in its corporate capacity."

Clearly, under former subdivision 2 of section 50-j of the General Municipal Law as initially enacted in 1974, an off-duty New York City policeman was entitled to indemnification from his employer, the City of New York, only when the incident in question arose "within the geographical limits of such city", i.e., within the geographical limits of his employer, the City of New York.

In 1975, the Legislature (L 1975, ch 843) broadened the scope of section 50-j of the General Municipal Law by amending it so as to provide indemnification for police

---

**2.** For many years prior to 1974, bills similar in purpose were vetoed primarily on the ground that they approached the question of indemnification of public employees for negligent acts in a piecemeal fashion (see 1973 S 3332-B, Veto Memoranda Nos. 225, 226; see, also, 1971 A 1210-A, Veto Memorandum No. 248; 1970 A 4197, Veto Memorandum No. 250; 1966 A 3617, Veto Memorandum No. 217; 1963 S 2119, A 3606, Veto Memoranda Nos. 130 and 129).

**3.** The statute as originally enacted in 1974 spoke of any city "having a population of one million or more". It is clear that the statute was referring to New York City.

officers employed by "every city, county, town, village, authority or agency". With respect to policemen who were acting off duty, the Legislature changed subdivision 2 of section 50-j by amending the phrase "when within the geographical limits of such city" to read "when within the geographical limits of his jurisdiction".

It is obvious that the Legislature's choice of language in the amended version of subdivision 2 of section 50-j of the General Municipal Law is ambiguous in that it was subject to both an expansive interpretation advocated by counsel for defendant Don Cooper, and a more limited interpretation consonant with the approach of the initial legislation enacted in 1974, i.e., within the geographical limits of the employer's jurisdiction. This ambiguity was specifically pointed out by several officials to whom the legislation was sent for comment by the Governor's counsel. The Division of Criminal Justice Services wrote to the Governor's counsel as follows:

"The proposed amendment of subdivision 2 appears to have introduced an ambiguity. As it presently reads, it is quite clear that it applies to an off-duty police officer who acts within New York City. The substitution of 'his jurisdiction' for 'such city', however, makes the meaning less clear * * * Pursuant to CPL section 140.10 (3), a police officer's geographical jurisdiction with respect to arrests for crimes is anywhere in the State of New York, not merely his own bailiwick. Therefore, a police officer from a small village, vacationing in Albany may effect an arrest as a police officer — not merely as a private citizen — in Albany for a crime committed in Albany or elsewhere and, if necessary, hotly pursue a person from Albany to Massachusetts to make the arrest.

"Probably, many municipalities would not care to assume liability for their officers' off-duty conduct anywhere outside their own municipality. Yet, the substitution of 'his jurisdiction' for 'such city' may lead to precisely such an interpretation. It would have been preferable — and much clearer — to have the provision read: 'within the geographical limits of [such city] *his employing municipality, authority or agency*,' or similar language".

The Secretary of State in his response stated: "3. N.Y. Criminal Procedure Law, § 140.10 (3), McKinney 1971, provides that a police officer may make an arrest without a warrant outside the geographical limitations of his area of employment. The commentary on section 140.10 discusses the so-called 'bailiwick' problem. That is, problems inherent in defining the jurisdiction of a police officer in terms other than the geographical limitations of the local government by which he is employed. The reference in this bill to the 'geographical limitations of his jurisdiction' are ostensibly references to the jurisdiction of a police officer under § 140.10. However, this is not entirely clear and may cause problems of interpretation".

Finally, the executive secretary of the Association of Towns of the State of New York wrote to the Governor's counsel as follows: "Pursuant to Criminal Procedure Law, § 140.10, police officers are authorized to make arrests outside the municipal boundaries of the employer. Such provision was intended to resolve the question of powers of arrest of a police officer — the so-called 'baliwick' [*sic*] problem. While such matter may have been resolved, the authorizations nevertheless exposed local governments to additional opportunities for liability. Subject bill, by using the terms geographical limitations of 'his jurisdiction' raises the question whether it was intended to include coverage for the exercise of the authority under Criminal Procedure Law 140.10. It is clear that present law refers only to geographical boundaries of the employer".

In view of the apparent ambiguity of subdivision 2 of section 50-j of the General Municipal Law, we have examined the contents of the bill jacket concerning the 1975 amendment of that subdivision. The documents contained therein indicate that the supporters of the bill were "merely asking for the same protection the State of New York granted in 1974 to the Police Officers employed by the City of New York". In responding to this request it is clear that the Legislature, by amending subdivision 2 of section 50-j of the General Municipal Law in 1975, merely intended to give off-duty policemen who were not employed by the City of New York the same benefits, and impose on governmental entities other than the City of New York the

same financial burden, as were given to and imposed on off-duty New York City policemen and New York City, respectively. Since former subdivision 2 of section 50-j of the General Municipal Law only governed an off-duty New York City policeman's right to indemnification for any financial loss arising out of acts committed within New York City, i.e., within the geographical limits of his employer's jurisdiction, the 1975 amendment to that subdivision must be read in the same vein.

### III

Since defendant Don Cooper was a Suffolk County police officer who was off duty at the time of the incident in question, and the incident occurred in Queens County, as a matter of law, he was not entitled to indemnification from his employer, Suffolk County, under subdivision 2 of section 50-j of the General Municipal Law.

Accordingly, the third affirmative defense was properly stricken by Special Term as to both Don and Mary Cooper, and the order should be affirmed insofar as appealed from.

MOLLEN, P. J., DAMIANI and GULOTTA, JJ., concur.

Order of the Supreme Court, Kings County, dated September 17, 1982, affirmed insofar as appealed from, with costs.